IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES M. MITICH, | : | CIVIL ACTION |
|     Plaintiff, | : | |
|         v. | : | |
| | : | |
| LEHIGH VALLEY RESTAURANT | : | |
| GROUP, INC., et al., | : | |
|     Defendants. | : | NO. 12-3825 |

## MEMORANDUM RE: MOTION TO DISMISS OR IN THE ALTERATIVE TO STAY

**Baylson, J.**                                                                                                            **December 12, 2012**

### I.    Introduction

Plaintiff James M. Mitich ("Plaintiff") brought this action against Defendants Lehigh Valley Restaurant Group, Inc. ("LVRG"), James Ryan ("Ryan"), Joseph Fusco ("Fusco"), and Luscinda Lobach ("Lobach") (collectively, "Defendants") alleging nine sundry state-law causes of action and two federal causes of action, eleven in total, arising out of his allegedly wrongful termination as President and Chief Operating Officer from LVRG.

Defendants filed a Motion to Dismiss (ECF Nos. 3 and 4) (the "Motion") requesting that the Court dismiss the case in its entirety according to the Rooker-Feldman doctrine or decline to exercise jurisdiction over it pursuant to Colorado River abstention. Defendants also argue that a number of Plaintiff's claims should be dismissed pursuant to res judicata and collateral estoppel, and that three of his state-law claims are preempted by federal law.

Review of the pleadings and parties' submissions revealed that all but one of Plaintiff's claims should be dismissed for reasons other than those raised by Defendants. For the reasons below, Defendants' Motion is GRANTED in part and DENIED in part. Plaintiff will need to file an amended complaint if he wishes to proceed with his one claim alleging violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

**II.    Summary of Facts and Background**

This dispute orbits around the termination of Plaintiff's employment with LVRG. According to Plaintiff, he was terminated from LVRG without cause and in violation of his employment contract after Defendants Ryan, Fusco, and Lobach engaged in a "scorched earth offensive against" against him, the object of which was to trump up charges of misconduct in order to permit termination of Plaintiff's employment with LVRG in order to reap personal gain. (Compl. ¶¶ 2, 30-31, 33.)  Defendants ultimately terminated Plaintiff for cause due to Plaintiff's alleged misconduct, which also resulted in Plaintiff forfeiting his accrued benefits under LVRG's Stock Appreciation Rights Plan (the "SAR Plan").  (Id. ¶¶ 37-40.)

Defendants' campaign against Plaintiff allegedly continued after his termination from LVRG.  Defendants allegedly improperly interfered with his other employment opportunities and illegally obtained his credit report in an effort to dig up dirt on him.  (Id. ¶ 44, 82.)

Plaintiff brings eleven causes of action, nine based on state law, two on federal law. Plaintiff's state-law claims are all closely tied to his employment relationship with Defendants: breach of his employment contract with LVRG and the SAR Plan; tortious interference with his employment contract and the SAR Plan; violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq.; violation of the Uniform Commercial Code,[1] conversion, and breach of contract arising from Defendants' sale of Plaintiff's LVRG stock; tortious interference with his employment with and prospective ownership of a third-party company; and conspiracy among the Defendants to engage in all of the unlawful conduct alleged in his Complaint.  Plaintiff's federal claims are for violation of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., alleging improper denial of his

---

[1] Claim VII alleges violations of the Uniform Commercial Code.  The Uniform Commercial Code is a model code that has no legal force.  The Court will treat this as a state-law claim under Pennsylvania's Commercial Code, 13 Pa. Con. Stat Ann. § 1101 et seq.

SAR Plan benefits (the "ERISA Claim"), and violation of the FCRA, alleging that Defendants obtained Plaintiff's credit report under false pretenses (the "FCRA Claim").

The Court's jurisdiction over this case is based on federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. (Compl. ¶ 10.) According to Plaintiff's Complaint, the parties in this action are not diverse; with the exception of Defendant Fusco, all parties are Pennsylvania residents. (Compl. ¶¶ 5-9.)

## III. Plaintiff's Federal Claims

Because the Court's jurisdiction over Plaintiff's nine state-law claims is supplemental, the Court begins by addressing the viability of Plaintiff's two federal claims. Plaintiff's ERISA Claim is dismissed because the SAR Plan is not covered by ERISA. The Court will, however, allow his FCRA Claim to proceed, provided that Plaintiff amends his Complaint; as currently pleaded, Plaintiff's FCRA Claim does not meet the standards established by Twombly and Iqbal.[2]

### A. Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

---
[2] Defendants did not seek dismissal of Plaintiff's FCRA Claim on this ground.

3

v. Twombly, 550 U.S. 544, 570 (2007)).  Iqbal clarified that the Court's decision in Twombly, which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'"  555 U.S. at 684.

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  Id. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555); accord Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 555 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two part analysis":

> 1. "[T]he factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions"; and
>
> 2. "[A] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  In sum, "a complaint must do more than allege the plaintiff's entitlement to relief.  A

4

complaint has to 'show' such entitlement with its facts." Id. at 211 (citing Phillips, 515 F.3d at 234-35).

### B. Plaintiff's ERISA Claim Is Dismissed Because ERISA Does Not Cover the SAR Plan.

Although the issue is not raised by Defendants in their Motion,[3] Plaintiff's Response (ECF No. 9) expressed uncertainty as to whether ERISA applies to the SAR Plan, stating that he pleaded "common law claims in the alternative [to his ERISA Claim] in the event that the SAR[] Plan is determined to not be subject to enforcement under ERISA." (Pl.'s Resp. at 37.) Although Plaintiff did not provide any basis for his uncertainty, it is well founded: the Third Circuit, and numerous other courts, have held that plans similar to the SAR Plan are bonus or incentive plans that are not covered by ERISA. Oatway v. AIG, Inc., 325 F.3d 184, 189 (3d Cir. 2003) (adopting what the court referred to as "the unbroken line of cases" following the holding in Murphy v. Inexco Oil Co., 611 F.2d 570 (5th Cir.1980), that bonus or incentive plans are not subject to ERISA).[4]

---

[3] "District Court[s] ha[ve] the power to dismiss claims sua sponte under Rule 12(b)(6)." Bintliff-Ritchie v. Am. Reins. Co., 285 F. App'x 940, 943 (3d Cir. 2008) (citing Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980)).

[4] The Court treats the SAR Plan as similar to a stock option plan, because:

1. Stock appreciation plans are generally understood to be one of a number of "phantom equity" compensation arrangements that employers use as substitutes for "real" equity compensation arrangements, such as stock options and restricted stock grants. Joseph A. Hugg, Phantom Equity Arrangements, in Venture Capital & Public Offering Negotiation, Ch. 15 § 8 (2011). "The appeal of phantom equity is that it provides employees with the financial incentives (but not the legal rights) of equity compensation, while eliminating many of the practical and legal impediments involved in the actual transfer of company stock." Id.

2. The terms of the SAR Plan show that it is, in fact, a "phantom equity" arrangement, (LVRG SAR Plan ¶¶ 1(f), (i)-(k), 4-5, Oct. 1, 2009, Compl. Ex. H)

   a. The Stock Appreciation Rights ("SARs") have Issue Prices,

   b. The present values of the SARs are determined according to the value of LVRG, and

When determining whether compensation plans similar to the SAR Plan fall within ERISA's ambit, the Third Circuit has instructed "that an ERISA plan is only a plan 'designed for the purpose of paying retirement income whether as a result of [its] express terms or surrounding circumstances.'" Id. at 188 (alteration in original) (quoting Murphy, 611 F.2d 570). A plan is not an ERISA plan if it evinces intent to provide discretionary performance incentives in addition to employees' usual compensation, and payouts are available upon the occurrence of non-retirement events. Houston v. Aramark Corp., 112 F. App'x 132, 134-36 (3d Cir. 2004); Oatway, 325 F.3d 184; Hahn, 99 F. Supp. 2d at 279-80; see also Bandy v. LG Indus., Inc. Equivalent Ownership Plan, No. Civ. A. 02-7359, 2003 WL 21499017, at *2-3 (E.D. Pa. June 23, 2003) (Hart, J.) (even though the plan allowed for redemption "only upon retirement, death, separation from employment, or change of control," it was still not covered by ERISA because it was intended to provide incentives to retain key personnel and "make up for . . . salary cuts"). This is true even if the plan "happens to provide payments after the end of an individual's employment and thus provides a source of retirement income." Hahn, 99 F. Supp. 2d at 279; accord Aramark, 112 F. App'x at 135-36 ("As the Fifth Circuit noted in a leading case on ERISA's applicability to key employee bonus plans, 'Any outright conveyance of property to an employee might result in some payment to him after retirement.'" (quoting Murphy, 611 F.2d at 575)); Oatway, 325 F.3d at 189 (holding that a plan was not covered by ERISA where post-retirement payments "were only incidental to the goal of providing current compensation").

---

       c.   The cash-out values of the SARs represent the net of their present values minus their Issue Prices; and

3. The SAR Plan is similar to the "Phantom Stock Plan" in Hahn v. Nat'l Bank, N.A., 99 F. Supp. 2d 275, 277-81 & n.2 (E.D.N.Y. 2000), to which that court applied the same analysis the Third Circuit applied to a stock option plan in Oatway, 325 F.3d 184.

According to Paragraph 1 of the SAR Plan, titled "Purpose," the SAR Plan is intended to:

1. "[P]rovide deferred compensation to a select group of highly compensated key managers who impact the long-term growth and profitability of" LVRG;

2. "[B]enefit [LVRG] by creating incentives for Participants."

(LVRG SAR Plan ¶ 1.) SARs are awarded annually, but participation in the plan and the amount of each annual award are entirely at the discretion of LVRG; the SAR Plan contains neither criteria for determining whether an award should be granted in any particular year, nor a method of calculating the amount of an award. (Id. ¶¶ 1(d), (l), 2 (LVRG or its designee "shall have the exclusive power to select Eligible Persons to be granted [SARs and] to determine the Amount of the [SARs] to be granted to each eligible person selected"), 3 ("[SARs] shall be granted . . . as [LVRG] shall determine . . . . [LVRG] will establish the value of the potential award for each Participant").)

Payouts from the SAR Plan are available upon any of the following events:

1. The "tenth anniversary of the grant of [SARs],"

2. The "termination of the Plan,"

3. The "occurrence of a Change in Control,"

4. The "Participant's Separation of Service," which is not defined as retirement, or

5. Death or disability of the participant.

(Id. ¶ 5.) Participants may elect to delay payment. (Id.) However, nothing in the SAR Plan effectively results in delaying payments until retirement. Indeed, the SAR Plan expressly contemplates that payouts will occur during participants' tenure with LVRG: "Notwithstanding the foregoing, a Participant shall forfeit any <u>non-distributed benefits</u> under this Plan in the event

7

of a Termination for Cause." (Id. ¶ 4 (emphasis added).) The terms of the SAR Plan set forth above show that the SAR Plan is a bonus or incentive plan not covered by ERISA.

The Court also recognizes that the SAR Plan may appear at first blush to be what is commonly referred to as a "top-hat" plan – "'a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees,'" In re IT Group, Inc., 448 F.3d 661 (3d Cir. 2006) (quoting 29 U.S.C. § 1051(2)) – because:

1. One of the stated purposes of the SAR Plan is to "provide deferred compensation to a select group of highly compensated key managers," and

2. LVRG intended for the plan to be "administered and interpreted in such a manner as to constitute an unfunded nonqualified deferred compensation plan . . . for purposes of Title I of ERISA."

(LVRG SAR Plan ¶ 1.) However, the Court does not find this language dispositive of whether the SAR Plan is covered by ERISA.

The entirely discretionary nature of awards under the SAR Plan, combined with LVRG's intent to benefit from the plan by "creating incentives for Participants," (Id. ¶ 1) demonstrate that the plan is a method of providing bonuses or "increased compensation as an incentive or reward for a job well done," Hahn, 99 F. Supp. 2d at 279, rather than a method of deferring compensation. This conclusion is supported by the Court's review of cases involving "top-hat" plans, which revealed that, quite unlike the SAR Plan in this case, benefits under "top-hat" plans are not subject to the unfettered discretion of the employer, but are determined either by:

1. The terms of the agreement, e.g., Alexander v. Brigham and Women's Physicians Org., Inc., 513 F.3d 37, 40 (1st Cir. 2008) (physicians subject to a yearly earnings caps had earnings above the caps automatically contributed to deferred compensation plans); Craig v. Pillsbury Non-

  Qualified Pension Plan, 458 F.3d 748, 751 (8th Cir. 2006) (the amount of deferred compensation was calculated using average compensation over a specified period of time); Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 263 (3d Cir. 2004) (amount of benefits specified in the contract); Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 240 (1st Cir. 2002) (value of the benefit was calculated according to terms set forth in the plan); Goldstein v. Johnson & Johnson, 251 F.3d 433, 438 (3d Cir. 2001) (benefits determined by a formula based on average compensation over specified years); Garratt v. Knowles, 245 F.3d 941, 944 (7th Cir. 2001) (benefits calculated based on earnings); or

2. Employees' elections to defer receiving a portion of compensation that would otherwise be presently due them, e.g., Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 285 (2d Cir. 2000) (the plan "allowed participants to defer up to 25% of their salary as contributions to the Plan. Participants were also permitted to borrow money at the prime rate from Extebank in order to contribute the maximum allowable amount to the Plan."); In re IT Group, Inc., 305 B.R. 402, 408 (Bankr. D. Del. 2004) (amounts contributed to plan deducted from current compensation), aff'd on other grounds, 448 F.3d 661 (3d Cir. 2006).

Because the SAR Plan is a bonus plan, it is not covered by ERISA, and Plaintiff's ERISA claim is dismissed.

### C. Plaintiff Has a Potentially Viable FCRA Claim.

Defendants argue that Plaintiff's FCRA Claim should be dismissed pursuant to the Rooker-Feldman doctrine, or that the Court should abstain from hearing the claim under Colorado River Water Conservation Dist. V. United States, 424 U.S. 800 (1976).[5]

Defendants argue that "the Rooker-Feldman doctrine deprives this Court of jurisdiction over Plaintiff's FCRA Claim, because "the relief sought by [Plaintiff] would void" a previous

---

[5] Defendants' lengthy Motion makes a number of arguments that are not directed to Plaintiff's FCRA claim. Because the Court will dismiss all of Plaintiff's other claims for reasons not raised in the Motion – see Sections III.B., supra, and IV., infra – the Court addresses only those arguments Defendants directed to Plaintiff's FCRA Claim, all other arguments being moot.

state court decision in LVRG v. Mitich, No. 2010-C-4275 (C.C.P Lehigh June 20, 2011) (the "2010 State Action"). The Rooker-Feldman doctrine applies only to final state court rulings on issues before a federal court. Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006).

The parties dispute whether the decision in the 2010 State Action is final for purposes of this Court's Rooker-Feldman analysis.[6] However, the Court need not decide this issue, because, even assuming the decision is final,[7] Defendants failed to point the Court to any ruling that is relevant to Plaintiff's FCRA claim[8]; and the Court's review of the decision confirmed that no such ruling exists. Accordingly, Defendants cannot establish that Plaintiff's FCRA Claim is barred by either of the instances in which the Rooker-Feldman doctrine applies:

1. "[I]f the federal claim was actually litigated in state court prior to the filing of the federal action"; or

---

[6] This issue was first raised in Plaintiff's Response. On October 4, 2012, the Court ordered the parties to confer with each other in order to reach agreement on whether the decision in the 2010 State Action is final. (ECF No. 10.) The Defendants' counsel filed a letter on October 8, 2012 (ECF No. 11) stating that the parties had conferred, but failed to reach agreement on the issue.

[7] Even if the state court had made a final ruling on issues related to Plaintiff's FCRA claim, the Rooker-Feldman Doctrine would not be triggered by what would be, at worst, an attempt to relitigate those issues. As the Supreme Court stated in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), the Rooker-Feldman Doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Therefore,

> Rooker-Feldman "is not implicated simply because a claimant brings to federal court a matter previously litigated in state court." Where "a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

Kliesh v. Select Portfolio Serv., Inc., Civil Action No. 12-548, 2012 WL 2500973, at *6 (E.D. Pa. June 29, 2012) (Baylson, J.) (alterations in original) (quoting Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010), cert. denied, 131 S. Ct. 1798 (2011)); accord Turner v. Crawford Sq. Apts. III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) ("Though [the plaintiff's] district court complaint undoubtedly overlaps her adjudicated state-court claims, and is based on the same operative facts, this overlap does not mean that the Rooker-Feldman doctrine is applicable here. As the Court explained in Exxon Mobile, a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.").

[8] Pages nine through eleven of Defendants' Motion contain a chart purporting to show the state court rulings that would be contravened by the relief Plaintiff seeks for each of his claims in this case. For Plaintiff's FCRA Claim, the chart contains "-----" in the column for the corresponding state court ruling.

2. "[I]f the federal claim is inextricably intertwined with a state adjudication such that federal relief can only be predicated upon a conclusion that the state court was wrong."

Kliesh, 2012 WL 2500973, at *6 (citation omitted).

Defendants also argue that the Court should abstain from hearing Plaintiff's FCRA Claim pursuant to Colorado River, because the FCRA Claim is related to claims currently pending in LVRG v. Mitich, No. 2011-C-2795 (C.C.P Lehigh) (the "2011 State Action"), in which:

1. LVRG claims that Plaintiff breached his employment contract and fiduciary duty; and

2. LVRG seeks a declaratory judgment that Plaintiff was terminated for cause.

"The threshold question in applying the abstention doctrine is whether the federal and state actions are parallel." Flint v. A.P. Desanno & Sons, 234 F.Supp.2d 506, 510 (E.D. Pa. 2002) (Baylson, J.) (citing Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir.1997)). Generally, cases are considered "parallel" for the purposes of Colorado River when they are "truly duplicative." Marran v. Marran, No. CIV.A. 03-1709, 2003 WL 21448868, at *11 (E.D. Pa. 2003) (Baylson, J.), aff'd on other grounds, 376 F.3d 143 (3d Cir. 2004) (quoting Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 890 (3d Cir.1997)). "Actions are considered duplicative if the same parties are litigating the same issues." Id. (citing Ryan, 115 F.3d at 196). The two cases "'need not be identical, however,'" as long as there is "a likelihood that the state litigation will dispose of all the claims presented in the federal case." Flint, 234 F. Supp. 2d at 510-11 (quoting CFI of Wis., Inc. v. Wilfran Agric. Indus., Inc., No. CIV. A. 99-1322, 1999 WL 994021, at *2 (E.D. Pa. Nov. 2, 1999) (Waldman, J.)); accord Perry v. Manor Care, Civil Action No. 05-5767, 2006 WL 1997480, at *3 (E.D. Pa. July 14, 2006) (Joyner, J.).

11

Plaintiff alleges that Defendants unlawfully posed as his prospective landlords in order to obtain his credit report and then used the information in the report to harm him. Defendants offer nothing but their conclusory statement in a footnote that Colorado River bars this Court from hearing Plaintiff's FCRA Claim because interpretation of Plaintiff's employment contract with LVRG is necessary to resolve both LVRG's claims in the 2011 State Action and Plaintiff's FCRA Claim. (Mot. at 29 n.4.) However, Defendants have utterly failed to demonstrate that adjudication of LVRG's claims in the 2011 State Action will involve determinations relevant to whether Defendants lawfully obtained Plaintiff's credit report under the FCRA. Accordingly, there is no indication that the 2011 State Action "will dispose of" Plaintiff's FCRA Claim, Flint, 234 F. Supp. 2d at 510-11, and Defendants failed to cross the threshold for application of Colorado River abstention. See Yang v. Tsui, 416 F. 3d 199, 203, 205 n.3 (3d Cir. 2005) (holding that in a custody dispute, state custody proceedings were not parallel to a Hague Convention Petition in federal court because the "claims being adjudicated and the issues being analyzed by the state and federal courts . . . would be different"); DeHart v. U.S. Bank, N.A. ND, 811 F. Supp. 2d 1038, 1046 (D.N.J. 2011) (actions are not parallel where "the two judgments would not necessarily be inconsistent or conflict with each other"); Manor Care, 2006 WL 1997480, at *4-6 (claims based on distinct theories of liability are not parallel even if they arise out of the same injury to the plaintiff); cf. Allied Nut and Bolt, Inc. v. NSS Indus., Inc., 920 F. Supp. 626, 628-29 (E.D. Pa.1996) (Pollak, J.) (actions are sufficiently similar for the purposes of Colorado River where they "arise from the same transaction and occurrence, involve the same parties, entail consideration of the same factual and legal issues, and seek essentially the same relief" (emphasis added)). Defendants' Motion is denied with respect to Plaintiff's FCRA Claim.

### D. Plaintiff Must Re-Plead His FRCA Claim If He Wishes to Proceed with It.

The "FCRA imposes civil liability for willful or negligent noncompliance with its requirements." U.S. v. Bormes, No. 11-192, slip op. at 2, 2012 WL 5475774, at *2 (U.S. Nov. 13, 2012); accord Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 192 (3d Cir. 2009). This includes a private right of action against "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses," 15 U.S.C. § 1681q. Gelman v. State Farm Mut. Auto. Ins. Co., Civil Action No. 06-5118, 2007 WL 2306578, at *4 (E.D. Pa. Aug. 4, 2007) (Yohn, J.), aff'd, 583 F.3d 187 (3d Cir. 2009).

In order to prove such a claim, Plaintiff must show not only that Defendants made "'a calculated attempt to mislead another in order to obtain information,'" but also that they lacked any permissible purpose, as defined in section 1681b of the FCRA, for obtaining his credit report. Id. at *4 (quoting Scott v. Real Estate Fin. Group, 956 F. Supp. 375, 381 (E.D.N.Y. 1997), rev'd on other grounds, 183 F.3d 97 (2d Cir. 1999), and citing Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 842 (5th Cir. 2004)). In other words, Defendants' alleged "misrepresentation is non-actionable if the FCRA would permit [them] to receive the credit report for an albeit unstated but permissible purpose," because their "legal right to the information 'renders immaterial any [alleged] misrepresentation [they] may have committed in obtaining [the credit information,] as the consumer reporting agency was authorized to disclose the report regardless.'" Daley v. Haddonfield Lumber Inc., 943 F. Supp. 464, 467-68 (D.N.J. 1996) (final alteration in original) (quoting Galligan v. Commonwealth Mortgage Assurance Co., No. Civ. A. 93–3129, 1994 WL 263351, at *5 n. 3 (E.D. Pa. June 14, 1994) (McGlynn, J.)).

In terms of damages, according to section 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer, is liable

to that consumer" for "any actual damages sustained . . . as a result of the failure or damages of not less than $100 and not more than $1,000," as well as punitive damages and "the costs of the action together with reasonable attorney's fees" as determined by the court. If a "natural person . . . obtain[s] a consumer report under false pretenses," the consumer is entitled to "actual damages . . . or $1000, whichever is greater," in addition to punitive damages and costs and attorney's fees. Id.

Plaintiff alleges that Defendants "falsely represent[ed] to a credit information bureau that Plaintiff was [their] prospective tenant and unlawfully secur[ed] a confidential copy of Plaintiff's credit history. . . . in order to support their decision and actions to terminate Plaintiff's employment and pursue litigation against him." (Compl. ¶¶ 44(f), 82.) This is hardly more than a "[t]hreadbare recital[] of the elements of a cause of action" for willful noncompliance with the FCRA, Iqbal, 556 U.S. at 678, precisely the kind of "'unadorned, the-defendant-unlawfully-harmed-me accusation'" disapproved of by the Supreme Court in Twombly and Iqbal. Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678).

For example, Plaintiff pled by implication, i.e. failed to allege specific facts in support of, the necessary allegation that Defendants lacked any permissible purpose for obtaining his credit report. Plaintiff's complaint is particularly defective in light of the fact that:

1. Plaintiff's employment relationship with LVRG may have provided Defendants with the requisite permissible purpose, because the FCRA permits obtaining a credit report for "employment purposes," so long as certain conditions are met, §1681b(a)(3)(B), (b); and

2. Plaintiff's Complaint is utterly devoid of factual allegations related to this potentially permissible purpose.

In fact, Plaintiff's Complaint is internally inconsistent regarding whether he was still employed by LVRG when Defendants allegedly obtained his credit report, stating both that:

14

1. "<u>Following the suspension and then termination of [his] employment</u>, the Company continued to engage in improper actions . . . including" unlawfully obtaining his credit report; and

2. Defendants used the information in the report "to support their decision and actions <u>to terminate Plaintiff's employment</u>."

(Compl. ¶¶ 44 (emphasis added), 82 (emphasis added).)

Furthermore, Plaintiff has failed to allege any facts supporting his claim for actual damages under the FCRA. (Compl. at Wherefore ¶ f (seeking "compensatory damages as allowed pursuant to the cited . . . federal statutes")). Plaintiff's bald assertion that the information in his credit report was used "to support" Defendants' decisions to terminate his employment and pursue litigation against him is effectively a legal conclusion that he suffered harm traceable to Defendants alleged wrongdoing, not a factual allegation from which that conclusion can be drawn.

"[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," <u>Airborne Beepers & Video, Inc. v. AT&T Mobilility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007); <u>accord</u> <u>Philips</u>, 515 F.3d at 232; Plaintiff's Complaint is at that point. Therefore, Plaintiff must amend his Complaint if he wishes to proceed with his FCRA Claim.

## IV. The Court Will Not Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

As detailed above, Plaintiff's ERISA Claim is dismissed, leaving his FCRA Claim as his only potentially viable federal claim. Assuming that Plaintiff decides to proceed with his FCRA Claim,[9] the Court will not exercise supplemental jurisdiction over his nine state-law claims, because they substantially predominate over his FCRA Claim: Plaintiff's nine state-law claims

---

[9] If Plaintiff elects not to amend his Complaint in order pursue his FCRA Claim, the Court will then dismiss that claim, as well as his state-law claims because it "has dismissed all claims over which it has original jurisdiction." 38 U.S.C. § 1367(c)(3).

15

are all closely related to his employment relationship with Defendants and present a multitude of issues that are wholly unrelated to the very limited issues raised by his FCRA Claim.

### A. Legal Standard for Supplemental Jurisdiction[10]

According to 28 U.S.C. § 1367(a), when a district court exercises federal question jurisdiction over an action, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In other words, courts should exercise supplemental jurisdiction "where [the plaintiff's] state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Section 1367 also provides "district court judges discretion to determine whether to exercise supplemental jurisdiction" and sets forth four circumstances in which courts may appropriately decline its exercise:

> 1. "'[T]he claim raises a novel or complex issue of State law,'"
>
> 2. "'[T]he claim substantially predominates over the claim or claims over which the district court has original jurisdiction,'"
>
> 3. "'[T]he district court has dismissed all claims over which it has original jurisdiction, or'"
>
> 4. "'[I]n exceptional circumstances, there are other compelling reasons for declining jurisdiction.'"

De Asencio, 342 F.3d at 309 (quoting § 1367(c)(1)-(4)).

---

[10] The Court may raise issues of subject matter jurisdiction sua sponte. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)).

State claims can "substantially predominate" over federal claims "'in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" Id. (quoting Gibbs, 383 U.S. at 726). Generally, a district court will find substantial predomination "where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage'– only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." Id. (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995)).

### B. Plaintiff's State Law Claims Substantially Predominate over His FCRA Claim.

While district courts are empowered to exercise jurisdiction over state-law claims when they are "so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy," § 1367(a), this "does not mean that [courts] must 'tolerate a litigant's efforts to impose upon it what it is in effect only a state law case.'" Lemon Bay Partners LLP v. Hammonds, C.A. No. 05-327, 2007 WL 1830899, at *5 (D. Del. June 26, 2007) (Sleet, J.) (quoting Gibbs, 383 U.S. at 726). Here, the Court need not tolerate Plaintiff's efforts to litigate nine state-law claims that unquestionably predominate over his FCRA claim "in terms of proof, of the scope of the issues raised, [and] of the comprehensiveness of the remedy sought." De Asencio, 342 F.3d at 309.

First, Plaintiff devotes less than one page of his twenty-two page Complaint to his FCRA Claim. The only relevant allegations are that:

> 1. Defendants "falsely represent[ed] to a credit information bureau that Plaintiff was [their] prospective tenant and unlawfully secur[ed] a confidential copy of Plaintiff's credit history"; and

17

> 2. Defendants did so "in order to support their decision and actions to terminate Plaintiff's employment and pursue litigation against him."

(Compl. ¶¶ 44(f), 82.)

Second, Plaintiff's nine state-law claims are variations on a few themes, all closely linked to his employment relationship with Defendants, that raise issues unrelated to and uninformed by whether Defendants' violated the FCRA:

> 1. Breach of Plainitff's employment and benefits contracts with LVRG,
>
> 2. Tortious interference with those contracts, and
>
> 3. Tortious interference with Plaintiff's other employment opportunities.

Plaintiff's assertion that the information in his allegedly illegally obtained credit report played some role in conduct giving rise to his state-law claims cannot overcome the fact that his FCRA claim is but a federal button on a suit made with state fabric by state tailors. As another court facing a similar situation put it:

> The amended complaint is comprised almost entirely of state law issues that bear no discern[i]ble relationship to the [federal] claim, and the plaintiffs present no persuasive reason for the court to use its discretionary power to exercise supplemental jurisdiction in this case. Given the foregoing, the court concludes that exercising supplemental jurisdiction in a case such as this would be an improper exercise of subject matter jurisdiction, since it would truly permit the tail to wag the dog.

Lemon Bay Partners LLP, 2007 WL 1830899, at *5 (citations and quotation omitted). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's nine state-law causes of action.

## V. Conclusion

Defendants' Motion is GRANTED in part, with respect to Plaintiff's ERISA Claim and claims arising under state law, and Defendants' Motion is DENIED in part, with respect to Plaintiff's FCRA Claim. If Plaintiff wishes to proceed with his FCRA Claim, he must file an amended complaint. An appropriate order follows.

O:\CIVIL 12\12-3825 Mitch v Lehigh Valley Rest Grp, Inc\12cv3825. Memo re Mot to Dismiss.docx